# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| JESUS ANTONIO SANDOVAL-ORTIZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | **EP-08-CA-054-FM** |
| v. | § | **EP-04-CR-2457-FM-3** |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Jesus Antonio Sandoval-Ortiz's ("Sandoval") "Motion under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("Motion to Vacate") [Doc. No. 113] and "Arguments in Support of 2255 to Show Ineffective Assistance of Counsel" ("Arguments in Support") [Doc. No. 115], both filed February 12, 2008. Sandoval challenges his conviction and sentence for possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine. Sandoval argues the Court's decision not to sequester the jury; insufficient evidence; and ineffective assistance of trial[1] and appellate[2] counsel resulted in his wrongful conviction and sentence. The United States of America ("Government") filed "Government's Response to Motion under 28 U.S.C. § 2255 to Vacate, Set Aside[,] or Correct Sentence by a Person in Federal Custody" ("Response") [Doc. No. 119] on April 24, 2008. On May 1, 2008, Sandoval filed "Petitioner's Reply to Government's Response to Motion under 28 U.S.C. § 2255 to Vacate, Set Aside[,] or Correct Sentence by a Person in Federal Custody" ("Reply") [Doc. No. 121].

After reviewing the Record, and for the reasons discussed below, the Court concludes Sandoval has not shown he is entitled to relief under the applicable legal standards. The Court will accordingly

---

[1] Manuel Acosta-Rivera and Sandra Lewis (collectively, "trial counsel") represented Sandoval in Criminal Cause No. EP-04-CR-2457-FM at his trial and sentencing.

[2] Philip Lynch ("appellate counsel") represented Sandoval on appeal in Case No. 05-51119.

deny Sandoval a hearing and dismiss his Motion to Vacate with prejudice. The Court also will deny

Sandoval a certificate of appealability.

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A.      Criminal Cause No. EP-04-CR-2457-FM

Along with co-defendants Erick Mendoza ("Mendoza") and Jorge Alberto Gonzalez-Fernandez

("Gonzalez"), Sandoval was indicted on two counts: conspiracy to possess with intent to distribute five

kilograms or more of cocaine, and possession with intent to distribute 500 grams of cocaine.[3]  On

November 19, 2004, Sandoval waived personal appearance at his arraignment.[4]  On January 10, 2005, the

Court granted Sandoval a continuance to provide him more time to prepare his defense and to allow plea

negotiations to continue.[5]  The Court again granted Sandoval a continuance on February 4, 2005, because

of the complex discovery issues in his case.[6]  On the same day, the Court set Sandoval's case for jury

selection and trial on April 25, 2005.[7]

On April 25, 2005, Sandoval's jury trial commenced.  At the trial, the Court conducted the voir

dire of the prospective jurors.[8]  During voir dire, the Court instructed the prospective jurors:

> What you are required to do when you come to the courthouse is simply being able to, if
> you get selected to serve as a juror, to base your decision insofar as evidence and
> information and your understanding of the law is strictly on what you hear in the
> courtroom and the law as I instruct it to you.[9]

The Court explained to the prospective jurors:

---

[3] Indictment, Doc. No. 24, filed Nov. 10, 2004.

[4] Waiver, Doc. No. 31, filed Nov. 19, 2004.

[5] Order, Doc. No. 39, filed Jan. 10, 2005.

[6] Order, Doc. No. 44, filed Feb. 4, 2005.

[7] Order, Doc. No. 45, filed Feb. 4, 2005.

[8] Trial Tr., Vol. 1, at 2:16-38:11, Apr. 25, 2005.

[9] *Id.* at 16:4-8.

that it is the responsibility of the [G]overnment's lawyer to present the evidence to you that the accused did what the [G]overnment alleges he did, and they have to do so. They have to convince you beyond a reasonable doubt.[10]

The Court also explained to all of the prospective jurors:

Mr. Sandoval . . . has an absolute right – let me repeat that word "absolute right" – to remain silent and not present any evidence. Why is that? It is that way because it follows from the other two principles that I mentioned to you. It follows that if the law presumes me to be innocent and the law says that any allegations against me[] the government has to prove beyond a reasonable doubt, then it makes sense that I shouldn't be required to disprove whatever it is the government alleges I did.[11]

The Court then asked the prospective jurors:

Any one of you have any hesitation about not following that principle if I instruct you that that's the law, and you have to follow that? If you do, please raise your right hand.[12]

None of the prospective jurors raised their hands.[13] The Court then explained

[t]he law is what it is. It's not what we would like it to be. It's not what we think it should be. It is what it is . . . . So do you understand now what I mean by the law is what it is, not what we would like it to be? Any one of you have any difficulty with following the legal instructions as I will give them to you, whether you like them or not? If you have any problem with doing that, please raise your right hand at this time and let me know.[14]

Again, none of the prospective jurors raised their hands.[15]

The Court went on to explain to the prospective jurors what it meant to be "fair and impartial."

The Court explained:

let me give you an example of what wouldn't be fair and impartial. Fair and impartial

---

[10] *Id*. at 17:1-4.

[11] *Id*. at 17:13-21.

[12] *Id*. at 18:4-6.

[13] *See id*. at 18:6-7.

[14] *Id*. at 18:9-10, 19:19-24.

[15] *See id*. at 19:25.

would be, let's say that – let's day that you were or a close relative of yours was wrongfully arrested. And in your opinion, that your relative was treated very poorly by law enforcement. And you cannot set that experience out of your mind, and you bring that into the courtroom. And you tell yourself, I am going to let the [G]overnment have it this time. I am going to find – I am going to vote for the defendant not guilty, regardless of what the evidence shows.

That's not fair and impartial. Why? Because you are deciding your case based on something other than the evidence, the testimony, and the legal instructions. You're deciding your case based on what? On a bias.

Prejudice would be if you decide your case, for example, based on the fact that you hate police officers, period. You're prejudiced against police officers. See? Wrong. So that's the question. Can you be a fair and impartial juror?[16]

After voir dire was completed and the jury empaneled and sworn in,[17] the Court cautioned the prospective jurors, stating

do not let anyone inquire of you about the case. That is, for example, you may be at home this evening and, you know, you may have to call your supervisor at work and say, you know, I was selected to serve on a jury in federal court, so I am going to be out whenever for the next two or three days. If that supervisor needs verification of whether you're on jury service or not, that's easy to do. . . . But you don't need to explain to the supervisor, for example, the case you're in, what type of case it is, what is it about.[18]

The Government then gave its opening statement, and then trial counsel gave an opening statement on behalf of Sandoval.[19]

The Government commenced its case-in-chief, calling El Paso County Sheriff's Office employee, Mario Garcia ("Garcia"), who was on a Drug Enforcement Administration ("DEA") task force, to testify. After eliciting the nature of Garcia's investigation, including that Mendoza and Gonzalez were involved in a cocaine sale, Garcia identified Sandoval as one of the individuals participating in a cocaine sale at

---

[16] *Id.* at 23:13-24:6.

[17] *Id.* at 47:16.

[18] *Id.* at 48:7-16.

[19] *Id.* at 56:4-60:24.

the Big 8 parking lot.[20]  Garcia testified Sandoval showed him two kilograms of cocaine in a black bag at the Big 8 parking lot.[21]  Garcia testified Sandoval rolled the window all the way down, and Garcia put his head inside the vehicle to feel the two bundles of cocaine.[22]  Garcia testified Sandoval told him there were only two, rather than three, kilograms of cocaine.[23]  Garcia testified Sandoval nodded his head when Garcia asked him if the quality of the cocaine was good.[24]

After the Government completed its direct examination of Garcia, the Court released the jury for the evening, but reminded the jurors "not to discuss the case with anyone."[25]  After the jurors left the courtroom, trial counsel moved for a mistrial, which the Court denied.[26]

On April 26, 2005, Sandoval's trial resumed.  Trial counsel proceeded to cross-examine Garcia.[27]  Trial counsel elicited from Garcia that several of the individuals involved in the investigation had never mentioned Sandoval's name, including Mendoza and Gonzalez.[28]  Trial counsel elicited from Garcia that Garcia could not see what was inside the bundles he had previously identified as cocaine.[29]  Trial counsel challenged Garcia as to the reliability of the report of the investigation and the quality of the audio recording made by investigators during the cocaine sale.[30]

---

[20] *Id.* at 86:22-87:9.

[21] *Id.* at 90:7-23.

[22] *Id.* at 93:2-3.

[23] *Id.* at 95:15-21.

[24] *Id.* at 96:3-5.

[25] *Id.* at 101:25-102:1.

[26] *Id.* at 102:9-103:11.

[27] Trial Tr., Vol. 2, at 12:20, Apr. 26, 2005.

[28] *Id.* at 19:12-20:5, 23:2-24:17.

[29] *Id.* at 37:21-39:13.

[30] *Id.* at 42:20-44:3.

The Government then called DEA agent Phillip Hoff ("Hoff") to testify. Hoff testified he saw an individual get into the car with Mendoza and Gonzalez from the back of a house on Tularosa Avenue and watched Mendoza's car reenter the Big 8 parking lot.[31] Hoff testified he met Sandoval's girlfriend at the Tularosa Avenue house that same evening.[32] Hoff testified he met Sandoval later that night and identified him at the trial.[33]

On cross-examination, trial counsel elicited from Hoff that he could not give a description of the person who got into the back of Mendoza's car.[34] Trial counsel elicited from Hoff that the he could not see the lower half of the body of the person he saw enter the car from the Tularosa Avenue house.[35] Trial counsel elicited from Hoff that no drugs were found at the Tularosa Avenue house after a canine had been run at the house.[36]

On redirect examination, Hoff testified that Sandoval's girlfriend appeared to be intoxicated, and she had the odor of alcohol on her.[37] He also testified that it appeared there was evidence of drinking going on in the backyard of the Tularosa Avenue house, and he witnessed many beer cans in the car in which Sandoval's girlfriend was sitting.[38] On recross-examination, Hoff testified there appeared to be a twelve-pack to a case-worth of beer cans in the car.[39]

The Government then called El Paso Police Department Detective, Salvador Silex ("Silex"), to

---

[31] *Id.* at 50:8-23.

[32] *Id.* at 51:7-14.

[33] *Id.* at 51:15-23.

[34] *Id.* at 56:1-5.

[35] *Id.* at 56:6-8.

[36] *Id.* at 56:14-57:8.

[37] *Id.* at 57:17-22.

[38] *Id.* at 57:23-58:6.

[39] *Id.* at 58:13-16.

testify.[40]  Silex testified he witnessed the cocaine being weighed at a DEA lab after it was seized.[41]  The parties stipulated to the weight of the cocaine and the chain of custody.[42]  Silex testified that the amount of cocaine was an amount meant for distribution.[43]  Silex also testified that Sandoval's wallet contained Mendoza's cell phone number.[44]

On cross-examination, trial counsel elicited that Silex saw the bundles with electrical tape when they were seized at the Big 8.[45]  Trial counsel also had Silex verify the rear passenger window, which Garcia had testified he put his head in, was not all the way down according to photographs taken to preserve the scene.[46]

On redirect examination, Silex testified the bag, which contained the cocaine, also contained Sandoval's girlfriend's card.[47]  On recross-examination, trial counsel elicited the bag was found in Mendoza's car, and Mendoza was the nephew of Sandoval's girlfriend.[48]

The Government then rested its case-in-chief.[49]  Trial counsel moved for a judgment of acquittal because the Government had not presented any evidence beyond a reasonable doubt to show Sandoval's

---

[40] *Id.* at 59:2.

[41] *Id.* at 59:18-60:7.

[42] *Id.* at 60:8-61:11.

[43] *Id.* at 62:12-14.

[44] *Id.* at 63:3-10.

[45] *Id.* at 64:8-15.

[46] *Id.* at 65:6-66:11.

[47] *Id.* at 67:11-21.

[48] *Id.* at 68:4-10.

[49] *Id.* at 68:15-17.

knowledge of the conspiracy or the cocaine.[50]  The Court denied trial counsel's motion.[51]

Sandoval then chose not to testify.[52]  Trial counsel offered a stipulation to the jury, in which the canine officer, who ran the canine on the night of Sandoval's arrest, stipulated that the canine did not alert to any drugs at the Tularosa Avenue house.[53]  Trial counsel rested and closed.[54]  The Government then closed its case.[55]

After the Government closed its case, trial counsel renewed its motion for judgment of acquittal.[56]  The Court denied the motion.[57]  The Court read the Jury Instructions.[58]  The Government then proceeded with its closing argument.[59]  During the Government's closing argument, trial counsel objected to the Government's argument about the bag or the cocaine coming from the Tularosa Avenue house.[60]  The Court overruled trial counsel's objection.[61]

Trial counsel then gave closing argument.[62]  Trial counsel reminded the jury that Sandoval was

---

[50] *Id.* at 69:1-6.

[51] *Id.* at 69:7.

[52] *See id.* at 72:11-12.

[53] *Id.* at 73:4-22.

[54] *Id.* at 73:25-74:1.

[55] *Id.* at 74:4-5.

[56] *Id.* at 74:9-13.

[57] *Id.* at 74:14-15.

[58] *See id.* at 74:16.

[59] *Id.* at 75:5-81:18.

[60] *Id.* at 77:25-78:4.

[61] *Id.* at 78:5.

[62] *Id.* at 82:3-93:3.

not required to present any evidence on his own behalf.[63]  Trial counsel attacked the Government's evidence as to the requisite knowledge Sandoval had to possess to be found guilty of conspiracy and possession with intent to distribute.[64]  Trial counsel attacked the Government's failure to call Mendoza, Gonzalez, or the initial informant.[65]  Trial counsel argued the only witness the Government offered concerning Sandoval's knowledge was Garcia, who trial counsel pointed out was accustomed to lying as a part of his job.[66]  Trial counsel also pointed out the unreliability of Garcia's testimony because he did not take notes; he was not working with a partner; he was in the business of making people believe what he said was true; and there was no video recording of the incident.[67]

Trial counsel pointed out how Garcia's testimony that Garcia put his head in the car was contradicted by the photo, which Silex testified captured the scene at the time of the arrest.[68]  Trial counsel pointed to the fact that Sandoval's girlfriend was related to Mendoza, and it was possible she could have been in Mendoza's car or placed the cocaine in the car.[69]  Trial counsel argued if Sandoval and Mendoza were co-conspirators or partners, then it would have made better sense that Sandoval would have had Mendoza's phone number memorized or listed in his cell phone or address book, rather than carrying it around in his wallet.[70]

In rebuttal, the Government argued Sandoval had the black bag in his possession and pointed out

---

[63] *Id.* at 82:13-16.

[64] *Id.* at 83:5-86:4.

[65] *Id.* at 83:12-14, 83:21-24.

[66] *Id.* at 84:3-15.

[67] *Id.* at 84:16-22.

[68] *Id.* at 86:15-87:13.

[69] *Id.* at 88:6-12.

[70] *Id.* at 89:1-6.

no evidence contradicted this point.[71]  Trial counsel objected to the Government arguing that Sandoval

never called Mendoza a liar when Mendoza told Garcia that Sandoval was his cousin, which the Court

sustained.[72]  Trial counsel also objected to the Government's bolstering of Garcia, which the Court

overruled.[73]

> After the Government concluded its rebuttal, the Court admonished the jury:
>
> Ladies and gentlemen, please be reminded that all of you have to be together when you
> are deliberating.  If one of you happens to step outside of the jury room, the deliberations
> must stop.  The only time you can deliberate is when the 12 of you are together in the
> jury room.[74]

While deliberating, the jury submitted a note to the Court regarding the quantity of the cocaine, to which

the Court responded that the jury should follow the Jury Instructions.[75]

> On April 27, 2005, the jury returned guilty verdicts on both counts of the Indictment.[76] On July

20, 2005, the Court sentenced Sandoval to 120 months for the conspiracy count and 60 months for the

possession with intent to distribute count, to run concurrently, followed by five years of nonreporting

supervised release for the conspiracy count and five years of nonreporting supervised release for the

possession with intent to distribute count, also to run concurrently.[77]  The Court waived the fine and

ordered Sandoval to pay the mandatory special assessment fees of $100 per count, for a total of $200.[78]

The Court entered its Judgment in a Criminal Case ("Judgment") on July 22, 2005, which reiterated the

---

[71] *Id.* at 93:14-16.

[72] *Id.* at 93:17-94:1.

[73] *Id.* at 94:15-22.

[74] *Id.* at 97:19-23.

[75] *Id.* at 98:14-99:11.

[76] *See* Trial Tr., Vol. 3, at 2:10-12, Apr. 27, 2005.

[77] Sentencing Hr'g, Vol. 4, at 7:8-13, July 20, 2005.

[78] *Id.* at 7:13-16.

Court's oral pronouncement of sentence.[79]

B.    *Appeal No. 05-51119*

On July 25, 2005, Sandoval timely filed a Notice of Appeal from the Judgment and the sentence imposed.[80]  Sandoval argued the guilty verdicts on both counts were tainted because the Court permitted a witness to testify that Sandoval knew he was in possession of cocaine.  Sandoval contended the 120-month sentence the Court imposed was unconstitutional.  The Fifth Circuit found Sandoval failed to demonstrate reversible error and affirmed his conviction.[81]  It further found Sandoval's attack of his 120-month sentence was foreclosed by Fifth Circuit case law.[82]  The Supreme Court denied Sandoval's petition for a writ of certiorari on February 20, 2007.[83]

C.    *Sandoval's Motion to Vacate and Arguments in Support*

Sandoval presents essentially four separate grounds in his Motion to Vacate and Arguments in Support.  First, Sandoval claims the Court erred in not sequestering the jury or keeping it until a verdict had been reached because "overnight at home is like presiding jurors of: Spouses.  Relatives.  Friends . . . More than 12 individuals."[84]  Second, Sandoval contends he received ineffective assistance of counsel because trial counsel did not adequately challenge the sufficiency of the evidence.[85]  Third, Sandoval challenges the sufficiency of the evidence as to the conspiracy conviction and the possession

---

[79] J. in Criminal Case, Doc. No. 88, July 22, 2005.

[80] Notice Appeal, Doc. No. 90, filed July 25, 2005.

[81] *United States v. Sandoval-Ortiz*, No. 05-51119, at 4 (5th Cir. June 20, 2006) (unpublished op.), Doc. No. 106, filed July 20, 2006.

[82] *Id.*

[83] *United States v. Sandoval-Ortiz*, No. 06-8962 (Feb. 20, 2007), Doc. No. 111, filed March 8, 2007.

[84] Pet'r's Mot. Vacate at 8 (page numbering consistent with CM/ECF page numbering).

[85] *Id.*; Pet'r's Arguments Supp. at 19-21, 23-28.

conviction.[86]  Fourth, Sandoval contends appellate counsel rendered ineffective assistance of counsel because he failed to present the aforementioned three grounds to the Fifth Circuit on appeal.[87]

    *D.*      *Government's Response to Sandoval's Motion to Vacate and Arguments in Support*

In response to Sandoval's first ground regarding the jury, the Government argues Sandoval is procedurally barred from raising the claim because he failed to do so on appeal.[88]  The Government explains Sandoval has not shown cause and explains there is no prejudice because he has not shown sequestration was warranted in his case.[89]  As for Sandoval's second claim of ineffective assistance of trial counsel, the Government asserts the Record demonstrates Sandoval received effective assistance of counsel because trial counsel spent a substantial amount of time investigating his case; cross-examined Government witnesses; moved for a mistrial; and argued strongly in closing.[90]  Further, the Government points out that trial counsel's decision not to call witnesses is a tactical decision, and that Sandoval himself made the informed decision not testify on his own behalf.[91]  In response to Sandoval's third ground, the Government contends the claim is procedurally barred because Sandoval did not raise it on appeal, and he has not shown cause and prejudice because the Government presented sufficient evidence for a jury to find Sandoval guilty.[92]  The Government did not respond to Sandoval's fourth ground.

    *E.*      *Sandoval's Reply*

In reply, Sandoval points out the purpose of sequestration is to protect jurors from outside

---

[86] Pet'r's Mot. Vacate at 8-9.

[87] *Id.* at 9.

[88] Gov't's Resp. at 2-3.

[89] *Id.* at 3.

[90] *Id.* at 9-10.

[91] *Id.* at 10.

[92] *Id.* at 3-7.

influence.[93]  Sandoval further explains the Court may order sequestration at its discretion in some instances and is required to do so in particular instances.[94]  Sandoval does not state what those particular instances are.[95]  Sandoval also argues trial counsel failed to present any evidence to the jury that would exonerate him; failed to subpoena witnesses; and failed to investigate and present evidence and statements favorable to him.[96]  Sandoval further argues the Government's case was based on a witness, whose testimony was not supported by any "solid[,] admissible evidence."[97]

## II.    APPLICABLE LAW

### A.    *Section 2255*

After a defendant has been convicted and exhausted or waived any right to appeal, the Court is normally "entitled to presume that [he] stands fairly and finally convicted."[98]  Section 2255 states:

> [a] prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.[99]

"Section 2255 provides the primary means of 'collaterally attacking a federal sentence' . . . and is the appropriate remedy for 'errors that occurred at or prior to the sentencing.'"[100]  Section 2255 relief is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have

---

[93] Pet'r's Reply at 2.

[94] *Id.*

[95] *See* id.

[96] *Id.* at 3.

[97] *Id.* at 2.

[98] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982) ("[A] final judgment commands respect.").

[99] 28 U.S.C. § 2255(a).

[100] *Padilla v. United States*, 416 F.3d 424, 425-26 (5th Cir. 2005) (citations omitted).

been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[101]  The

Fifth Circuit draws a distinction "between constitutional or jurisdictional errors on the one hand, and

mere errors of law on the other."[102]  "[T]o obtain collateral relief based on trial errors to which no

contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his

double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."[103]

The cause-and-actual-prejudice standard is "significantly more rigorous than . . . the plain error

standard applied on direct appeal."[104]  This procedural bar does not apply, however, to claims which

could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.[105]  A

"failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from

being brought in a later, appropriate proceeding under [section] 2255."[106]

The Court must grant an evidentiary hearing on Sandoval's section 2255 claim "[u]nless the

motion and the files and records of the case conclusively show that [he] is entitled to no relief."[107]  With

respect to an ineffective assistance of counsel claim, "[t]he question whether an evidentiary hearing is

necessary . . . depends on an assessment of the record."[108]  If the Court "cannot resolve the allegations

---

[101] *United States v. Gaudet,* 81 F.3d 585, 589 (5th Cir. 1996) (citations omitted) (internal quotation marks omitted).

[102] *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir. 1992) (citations omitted) (internal quotation marks omitted) (notation omitted).

[103] *Frady*, 456 U.S. at 167-68, 102 S. Ct. at 1594 (citation omitted) (notation omitted).

[104] *Gaudet,* 81 F.3d at 589.

[105] *See Pierce*, 959 F.2d at 1301.

[106] *Massaro v. United States*, 538 U.S. 500, 509, 123 S. Ct. 1690, 1696 (2003).

[107] *United States v. Fishel*, 747 F.2d 271, 273 (5th Cir. 1984) (citation omitted) (alteration in original) (internal quotation marks omitted).

[108] *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990) (citation omitted).

without examining evidence beyond the record, it must hold a hearing."[109]  On the other hand, "if the record is clearly adequate to fairly dispose of the claims of inadequate representation, further inquiry is unnecessary."[110]

### B.    Ineffective Assistance of Counsel

The Court applies the *Strickland v. Washington*[111] standard to test an ineffective assistance of counsel claim.[112]  According to the Fifth Circuit, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[113]  Pursuant to *Strickland*, to demonstrate ineffectiveness of counsel Sandoval must first show his trial counsel's and appellate counsel's performances were "deficient."[114]  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [Sandoval] by the Sixth Amendment."[115]  Performance is measured by "an objective standard of reasonableness under prevailing professional norms."[116]

Second, Sandoval "must show that the deficient performance prejudiced the defense."[117]  In order "[t]o show prejudice, [Sandoval] must show that there is a reasonable probability that, but for counsel's

---

[109] *Id.* (citation omitted).

[110] *Byrne v. Butler*, 845 F.2d 501, 512 (5th Cir. 1988) (citations omitted).

[111] 466 U.S. 668, 104 S. Ct. 2052 (1984).

[112] *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985)).

[113] *United States v. Torres*, 163 F.3d 909, 913 (5th Cir. 1999) (notation omitted) (internal quotation marks omitted).

[114] 466 U.S. at 687, 104 S. Ct. at 2064.

[115] *Id.*, 104 S. Ct. at 2064.

[116] *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994) (citation omitted).

[117] *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

unprofessional errors, the result of the proceeding would have been different."[118]  Sandoval must demonstrate a reasonable probability that, but for his trial counsel's errors, he would have taken a different course of action in his case.[119]  "The ultimate focus of the inquiry must be on the fundamental fairness of the challenged proceeding."[120]  If Sandoval cannot make a showing both of deficient performance and resulting prejudice, he cannot establish ineffective assistance of counsel.[121]

Effective assistance of counsel "may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."[122]  Nonetheless, "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."[123]  Trial counsel is not required to make frivolous objections.[124]  Likewise, appellate counsel is not required to raise frivolous issues on appeal.[125]  Appellate counsel also is not required to raise every non-frivolous issue on appeal.[126]

C.    *Certificate of Appealability*

According to Federal Rule of Appellate Procedure 22 ("Rule 22"), "[i]n a habeas proceeding in which the detention complained of arises . . . in a [section 2255] proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district court judge issues a certificate of appealability under

---

[118] *Castro*, 26 F.3d at 559-60 (citation omitted) (internal quotation marks omitted).

[119] *Carter*, 918 F.2d at 1200 (citations omitted).

[120] *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir. 1985).

[121] *Castro*, 26 F.3d at 559.

[122] *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2650 (1986) (citations omitted).

[123] *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (citations omitted) (internal quotation marks omitted).

[124] *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994).

[125] *Id.*

[126] *See Ellis v. Lynaugh*, 873 F.2d 830, 839 (5th Cir. 1989).

28 U.S.C. § 2253(c)."[127]  Rule 22 states "the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue."[128]  Appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[129]  In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which certificate of appealability is granted.[130]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[131]  To warrant a certificate as to claims that the Court rejects solely on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[132]

## III.  DISCUSSION

Because he is proceeding *pro se* in this matter, the Court construes Sandoval's Motion to Vacate liberally.[133]  Sandoval need not show cause and prejudice for the Court to review his ineffective assistance of trial and appellate counsel claims.  Sandoval, however, does not show cause with respect to his sequestration or sufficiency of the evidence claims.  Nonetheless, because Sandoval alleges

---

[127] FED. R. APP. P. 22(b)(1).

[128] FED. R. APP. P. 22(b)(1).

[129] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding habeas relief scope of appellate review is limited to issues on which certificate of appealability is granted).

[130] *See* 28 U.S.C. § 2253(c)(3) (setting forth narrow scope of appellate review in habeas corpus matters); *Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding certificate of appealability is granted on issue-by-issue basis, limiting appellate review to those issues).

[131] 28 U.S.C. § 2253(c)(2).

[132] *Slack v. McDaniel*, 529 U.S. 473, 478, 120 S. Ct. 1595, 1601 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to certificate of appealability determination in context of section 2255 proceedings).

[133] *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (footnote omitted).

ineffective assistance of appellate counsel, the Court will assume, *arguendo*, Sandoval has shown cause. Sandoval still cannot show prejudice, however, and therefore, these claims, along with his ineffective assistance of counsel claims, are insufficient to warrant a hearing. Because the Record is adequate to dispose of all of Sandoval's claims, the Court will deny Sandoval's Motion to Vacate.[134]

   A.    *Sequestration of Jury*

Sandoval claims the Court should have sequestered the jury. Sequestration is "an extreme measure," a "burdensome tool" to assure a fair trial.[135] Whether to sequester the jury is a matter of sequestration for the Court.[136] "A defendant, complaining of a refusal to sequester, must demonstrate a substantial likelihood of prejudice flowing from the refusal to sequester to warrant a new trial."[137]

Sandoval has not shown a substantial likelihood of prejudice. The Court repeatedly cautioned the jury about speaking about the case. Before the jury panel was selected, the Court informed the prospective jurors that if they were selected, they were to base the decision on the evidence and information they heard in the courtroom and on the Jury Instructions.[138] The Court also instructed the empaneled jury to not let anyone inquire about the case, including what type of case it was and what it was about.[139] When the trial was adjourned for the first time, the Court reminded the sworn jurors "not to discuss the case with anyone."[140] After both sides rested, the Court reminded the jurors that they could not deliberate unless they were together in the jury room.[141]

---

[134] *See Byrne*, 845 F.2d at 512.

[135] *United States v. Greer*, 806 F.2d 556, 557 (5th Cir. 1986) (citation omitted).

[136] *Id.* (citation omitted).

[137] *Id.* at 557-58 (citation omitted).

[138] Trial Tr., Vol. 1, at 16:4-8.

[139] *Id.* at 48:7-16.

[140] *Id.* at 101:25-102:1.

[141] Trial Tr., Vol. 2, at 97:19-23.

Sandoval assumes because the jurors were able to go home that they discussed the case with family and friends. He has offered nothing to support this contention. He has shown in no way the jurors violated their oath to examine the evidence in light of the law and to deliberate only when all twelve jurors were present. Nothing about this case presented a need for sequestration. It was well within the discretion of the Court to recess the deliberation until the following day. Hence, Sandoval has not shown he is entitled to a hearing on this claim.

### B. Ineffective Assistance of Trial Counsel

Sandoval contends trial counsel rendered ineffective assistance because neither trial counsel challenged the sufficiency of the evidence or investigated or otherwise presented evidence or witnesses in his defense. A claim that trial counsel failed to investigate "plainly implicates *Strickland*'s protections, for '[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'"[142] Trial counsel's duty to investigate is "not without limit," and the Court will consider the totality of the circumstances when evaluating if trial counsel has been effective.[143] Trial counsel need not investigate "everyone whose name happens to be mentioned by the defendant."[144] The Fifth Circuit "indulge[s] a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."[145]

In claiming trial counsel failed to investigate, Sandoval's "bare allegations do not suffice."[146] "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what

---

[142] *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) (citation omitted) (alteration in original).

[143] *See Bell v. Watkins*, 692 F.2d 999, 1009 (5th Cir. 1982) (citation omitted).

[144] *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (citation omitted).

[145] *Moore v. Johnson*, 194 F.3d 586, 591-92 (5th Cir. 1999) (citation omitted).

[146] *Nelson*, 989 F.2d at 850.

the investigation would have revealed and how it would have altered the outcome of the trial."[147] Sandoval's desire to have trial counsel present a specific defense "does not amount to ineffective assistance on federal habeas review."[148]  Here, Sandoval has alleged no more than bare allegations as to his trial counsel's failure to investigate.

Furthermore, the Record shows trial counsel's performance was not deficient.  Trial counsel moved for a mistrial on the first day of trial after the direct examination of the Government's chief witness, which the Court denied.[149]  Trial counsel thoroughly cross-examined all the Government's witnesses.[150]  With respect Garcia, trial counsel was able to draw out a better description of how the cocaine was packaged; the suspect reliability of his report; the quality of the audio recording; and the fact that the co-conspirators never mentioned Sandoval's name.[151]  With respect to Hoff, trial counsel elicited that Hoff could not give a description of the person who got in Mendoza's car; he could not see the lower half of the person who got in Mendoza's car; and no drugs were found at the Tularosa Avenue house.[152] With respect to Silex, trial counsel elicited the cocaine bundles were covered completely in electrical tape; the photographs taken to preserve the scene show the rear passenger window was only halfway down; and the black bag, which had Sandoval's girlfriend's (who was Mendoza's aunt) card in it, was found in Mendoza's car.[153]

After the Government rested its case-in-chief, trial counsel moved for a judgment of acquittal,

---

[147] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted) (internal quotation marks omitted).

[148] *Ries v. Quarterman*, 522 F.3d 517, 529 (5th Cir. 2008) (citation omitted).

[149] Trial Tr., Vol. 1, 102:9-103:11.

[150] *See* Trial Tr., Vol. 2, at 12:20-44:4 (cross-examination of Det. Garcia); *Id.* at 52:05-57:11, 58:12-17 (cross-examination of Sp. Agt. Hoff); *Id.* at 63:24-66:17, 68:03-11 (cross-examination of Det. Silex).

[151] *Id.* at 19:12-20:5, 23:2-24:17, 37:21-39:13, 42:20-44:3.

[152] *Id.* at 56:1-8, 56:14-57:6.

[153] *Id.* at 64:8-15, 65:6-66:11.

which the Court denied.[154]  Trial counsel offered a stipulation, which showed there were no drugs at the

Tularosa Avenue house.[155]  After the Government closed its case, trial counsel renewed the motion for

judgment of acquittal, which the Court denied.[156]  During the trial counsels' closing argument, trial

counsel reminded the jury that Sandoval was not required to present any evidence; attacked the

Government's evidence as to the requisite knowledge Sandoval had to possess to be found guilty of

conspiracy and possession with intent to distribute; attacked the Government's failure to call Mendoza,

Gonzalez, or the initial informant; argued the only witness the Government offered concerning

Sandoval's knowledge was Garcia, who trial counsel pointed out was accustomed to lying as a part of his

job; and pointed out the unreliability of his testimony because he did not take notes, and he was not

working with a partner, he was in the business of making people believe what he said was true.[157]

Trial counsel also pointed out how Garcia's testimony was contradicted by the photo, which

Silex testified captured the scene at the time of the arrest; pointed to the fact that Sandoval's girlfriend

was related to Mendoza, and it was possible she could have been in Mendoza's car or placed the cocaine

in the car; and argued if Sandoval and Mendoza were co-conspirators or partners, then it would have

made better sense that Sandoval would have had Mendoza's phone number memorized or already listed

in his cell phone or address book, rather than carrying it around in his wallet.[158]

The Record demonstrates trial counsel advocated zealously for Sandoval.  Trial counsel tested

the sufficiency of the evidence.  Trial counsel also called into question Garcia's credibility and pointed

out inconsistencies between the testimony and the evidence.  Hence, Sandoval has not shown trial

---

[154] *Id.* at 69:1-7.

[155] *Id.* at 73:4-22.

[156] *Id.* at 74:9-15.

[157] *Id.* at 83:5-86:4, 83:12-14, 83:21-24, 84:3-22.

[158] *Id.* at 86:15-87:13, 88:6-12, 89:1-6.

counsel's performance was deficient.  Even if he had shown trial counsel's performance was deficient, however, as the discussion below demonstrates, Sandoval cannot show prejudice.  Accordingly, the Court will deny Sandoval a hearing on this claim.

C.      *Sufficiency of the Evidence*

According to the Fifth Circuit, "[e]vidence is sufficient to sustain a conviction if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt."[159]  The Court must examine "the evidence as a whole and construe[] it in the light most favorable to the verdict."[160]

Section 841, Title 21 of the United States Code, requires knowing or intentional possession with intent to distribute a "controlled substance," not necessarily cocaine.[161]  "[T]he identity of the particular controlled substance involved is not an element of the section 841(a)(1) offense."[162]

In order to prove the substantive offense of section 841, the Government must show "(1) that each defendant knowingly (2) possessed the drug (3) with the intent to distribute."[163]  The specific intent requirement for section 841 is "knowledge that the substance possessed is a controlled substance."[164]  According to the Fifth Circuit, "[p]ossession may be actual or constructive."[165]  Constructive possession includes "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance."[166]  "[T]he jury could infer the intent to distribute from possession of a large

---

[159] *United States v. Serna-Villarreal*, 352 F.3d 225, 234 (5th Cir. 2003) (citation omitted).

[160] *Id.*

[161] *See* 21 U.S.C. § 841(a).

[162] *United States v. Deisch*, 20 F.3d 139, 150-51 (5th Cir. 1994) (citation omitted).

[163] *United States v. Lopez*, 979 F.2d 1024, 1031 (5th Cir. 1992) (citation omitted).

[164] *United States v. Cartwright*, 6 F.3d 294, 303 (5th Cir. 1993) (citation omitted).

[165] *Lopez*, 979 F.2d at 1031.

[166] *Id.* (citation omitted) (internal quotation marks omitted).

amount of drugs."[167]

In order to prove conspiracy pursuant to section 846, Title 21 of the United States Code, the Government must prove beyond a reasonable doubt "(1) an agreement existed between at least two non-government people to import and possess the controlled substance with intent to distribute, (2) the defendant knew of the conspiratorial agreement, and (3) he intentionally participated in the conspiracy."[168]  The Fifth Circuit has found "[c]oncert of action can indicate agreement and voluntary participation," and "[t]he surrounding circumstances may establish knowledge of a conspiracy."[169]  The Fifth Circuit has concluded

> [w]here the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, or where the character of the property involved or the nature of the activity is such that knowledge on the part of one member concerning the existence and function of other members of the same scheme is necessarily implied due to the overlapping nature of the various roles of the participants, the existence of a single conspiracy will be inferred.[170]

The Government is not required to prove an overt act in furtherance of a conspiracy to prove a drug conspiracy existed.[171]  The Government may rely upon circumstantial evidence.[172]  The Government must prove the requisite criminal intent necessary for the substantive offense in order to convict a defendant of conspiracy to violate a federal statute.[173]

"[A] conviction for conspiracy to import a controlled substance may be sustained although the defendant engaged only in the conspiracy's . . . delivery aspects after the contraband entered the

---

[167] *Id.* (citation omitted).

[168] *United States v. Gourley*, 168 F.3d 165, 170 (5th Cir. 1999) (citations omitted).

[169] *Lopez*, 979 F.2d at 1029 (citation omitted).

[170] *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982) (citations omitted).

[171] *Id.* (citation omitted).

[172] *Gourley*, 168 F.3d at 170 (citation omitted).

[173] *United States v. Barnett*, 197 F.3d 138, 146 (5th Cir. 1999).

country."[174]   "[T]o obtain a conviction under the knowledge element of [s]ection 846, the government is only required to show that the defendant knew that the substance was a controlled substance."[175]

Garcia testified Mendoza and Gonzalez had to go to the alley behind the Tularosa Avenue house to get the cocaine; Sandoval was present at the cocaine sale; Sandoval responded to questions concerning the quantity and quality of the cocaine; Sandoval was referred to as Mendoza's cousin, to which Sandoval did not object at the time of the cocaine sale; and Sandoval had the bag, which contained the cocaine, in his lap.  Hoff testified that he saw a third person get into Mendoza's car behind the Tularosa Avenue house and that he saw the car return to the Big 8 parking lot.  A jury could infer Sandoval's knowledge of the cocaine from his responses to Garcia's questions concerning the quantity and quality.  A jury could find Sandoval possessed the drug because it was in the bag, which belonged to his girlfriend, in his lap.  Finally, a jury could infer the intent to distribute from possession of two kilograms of cocaine.

With respect to the conspiracy charge, Garcia testified Mendoza and Gonzalez attempted to arrange a cocaine sale with him; and Mendoza and Gonzalez had to retrieve the cocaine from behind the Tularosa Avenue house.  Hoff testified that he saw a third person get into Mendoza's car behind the Tularosa Avenue house; and he saw Sandoval after the car returned to the Big 8 parking lot and after the arrest.  The testimony showed an agreement existed at least between Mendoza and Gonzalez.  The jury could infer by Sandoval's presence at the sale, the testimony concerning the cocaine in his lap, and his responses about the quantity and the quality of the cocaine that he had knowledge of the conspiracy and voluntarily participated in it.[176]  In examining this evidence in a light most favorable to the verdict, the Government presented sufficient evidence for a rational trier of fact to find Sandoval guilty on both

---

[174] *Gourley*, 168 F.3d at 170 (citation omitted).

[175] *United States v. Patino-Prado*, 533 F.3d 304, 311-12 (5th Cir. 2008) (citation omitted) (internal quotation marks omitted).

[176] *See Lopez*, 979 F.2d at 1029.

counts beyond a reasonable doubt.

Sandoval's contention that the Government relied on Garcia's testimony, with nothing further, does nothing to undermine the sufficiency of the evidence. The determination of the credibility of a witness is the province of the jury.[177] The jury could have found Garcia's testimony to be very credible. Accordingly, the Court will deny Sandoval a hearing on this claim.

### D. Ineffective Assistance of Appellate Counsel

Sandoval contends his appellate counsel was ineffective because he did not raise the three aforementioned claims on appeal. Because Sandoval cannot point to any deficient performance, the Court will deny Sandoval a hearing on this claim. Appellate counsel did not have to raise the frivolous claim of sequestration because the decision of whether or not to sequester the jury was well within the discretion of the Court, and Sandoval could not otherwise show a substantial likelihood of prejudice, as discussed in Part III.A. Likewise, unless the Record is fully developed at trial as to the ineffective assistance of trial counsel claim, that claim is appropriate in a section 2255 motion, not an appeal. Hence, appellate counsel's performance was not deficient for not raising the ineffective assistance of trial counsel on appeal. Finally, as to Sandoval's sufficiency of the evidence claim, appellate counsel did raise an issue with Garcia's testimony on appeal. That he did not raise any other aspect concerning the sufficiency of the evidence was not deficient, however, because as discussed in Part III.C, a rational trier of fact could have found the evidence sustained the verdict.

### E. Certificate of Appealability

Although Sandoval has not yet filed a notice of appeal, this Court nonetheless may address whether he is entitled to a certificate of appealability.[178] Here, Sandoval's Motion to Vacate fails

---

[177] *See United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993).

[178] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining it is appropriate for district court to address *sua sponte* issue of whether a certificate of appealability should be granted or denied, even before one is requested).

because he has not presented anything, which can sustain any of his four claims.  Accordingly, Sandoval is not entitled to a certificate of appealability.

IV.    **CONCLUSION AND ORDERS**

The Court concludes Sandoval has not raised any grounds, which entitle him to relief.  The Court will therefore deny his Motion to Vacate and dismiss this matter with prejudice.  The Court further concludes Sandoval is not entitled to a certificate of appealability.  Accordingly, the Court enters the following orders:

1.    Sandoval's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" [Doc. No. 113] is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE**.

2.    Sandoval is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

3.    All pending motions in this cause, if any, are **DENIED** as **MOOT**.

**SO ORDERED.**

**SIGNED** this **29th** day of **October**, **2009**.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**